UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ANTHONY HARDY, et al. and Members of the Class, on behalf of all others similarly situated<br><br>                    Plaintiffs,<br><br>    v.<br><br>DISTRICT OF COLUMBIA<br><br>                    Defendant. | Civil Action No. 09-cv-01062 (RLW) |

**MEMORANDUM OPINION**

Before the Court is Plaintiffs' Second Renewed Motion for Class Certification (Dkt. No. 33). Upon consideration of the briefs and oral argument, the entire record, and for the following reasons, Plaintiffs' Motion is hereby **GRANTED**. For purposes of this ruling, the Court will assume that the reader is familiar with the Court's previous Memorandum Opinion in this case and the factual assertions and arguments made by the parties.

**BACKGROUND**

Plaintiffs Anthony Hardy and Donnell Monts, on behalf of themselves and all others similarly situated ("Plaintiffs"), have filed a one-count Complaint against the District of Columbia. (Dkt. No. 1). Plaintiffs allege that the District seized and forfeited cash from them without providing adequate notice under D.C. Code § 48-905.02 ("the D.C. Forfeiture Statute") and the Fifth Amendment to the U.S. Constitution. (Dkt. 1 at 2).

Plaintiffs filed their first motion for class certification on September 8, 2009. (Dkt. No. 6). The Court denied Plaintiffs' motion without prejudice because the class was not sufficiently

1

defined and Plaintiffs had failed to meet their burden. The Court allowed discovery so that the Plaintiffs could "better flesh out who [their] class might include."

At a hearing on July 21, 2010, the parties represented that class discovery was complete. The District represented that the class certification issues were "now teed up." (Dkt. No. 21 at 7). Plaintiffs filed a second motion for class certification on August 30, 2010. In its Memorandum Opinion denying the second motion, the Court cited numerous concerns with the proposed class definition. (Dkt. Nos. 31-32). The Court allowed Plaintiffs a third and final opportunity to address and potentially cure those concerns. (Id. at 7-8).

Plaintiffs have altered their class definition a third time and now seek to certify two classes: the "Failed Notice Class" and the "Incarcerated Persons Class." Plaintiff Anthony Hardy seeks to represent the "Failed Notice Class," which includes individuals meeting the following criteria:

> (1) The person was arrested by an officer of the District of Columbia Metropolitan Police Department.
> (2) The MPD took cash from the person.
> (3) The person's criminal case relating to the arrest was concluded on or after June 8, 2006, or if the person was released by the MPD without charge, the person was arrested on or after June 8, 2005.
> (4) The District kept (or keeps) the person's cash (whether by storing, using, or depositing).
> (5) On or before October 28, 2009, the District mailed an administrative forfeiture notice to the person, but the District did not receive back a signed mail receipt.
> (6) The District did not re-send a notice regarding the cash.
> (7) The District did not within one year of the conclusion of the person's criminal case (or release without charge) file a civil forfeiture action.

(Dkt. No. 33 at 1-2).

Plaintiff Darnell Monts seeks to represent the "Incarcerated Persons Class," which includes individuals meeting the following criteria:

> (1) The person was arrested by an officer of the District of Columbia Metropolitan Police Department.
> (2) The MPD took cash from the person.
> (3) The person's criminal case relating to the arrest was concluded on or after June 8, 2006, or if the person was released by the MPD without charge, the person was arrested on or after June 8, 2005.
> (4) The District kept (or keeps) the person's cash (whether by storing, using, or depositing).
> (5) On or before October 28, 2009, the District mailed an administrative forfeiture notice to the person.
> (6) At the time of mailing, the person was held by or in the custody of the District of Columbia Department of Corrections.
> (7) The District did not mail or deliver an administrative forfeiture notice to the person at the place of incarceration.
> (8) The District did not within one year of the conclusion of the person's criminal case (or release without charge) file a civil forfeiture action.

(Dkt. No. 33 at 2).

For the reasons set forth below, Plaintiffs have met their burden under Rule 23 as to both proposed classes.

## ANALYSIS

### A. Rule 23(a) factors

#### 1. Numerosity

Rule 23(a)(1) requires Plaintiffs to establish that "the class is so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). The District does not meaningfully refute the fact that Plaintiffs have established numerosity. During discovery, Plaintiffs deposed Lt. Derek Gray, manager of the evidence control division of the Metropolitan Police Department ("MPD"). Gray, who the District designated as its Rule 30(b)(6) witness,[1] testified that the

---

[1] Lt. Gray was designated to testify on topics including: "The policies, customs, and practices for providing notice for administrative forfeiture of cash or currency allegedly related to a violation of the Controlled Substances Act, including: a) The sending of notice by certified mail; b) Publication; c) Notice to incarcerated persons; d) Policies, customs and practices for

3

evidence control division is the division that sends out "notices relating to forfeiture proceedings of cash and other property." (Dkt. No. 22-5 at 8; 30-31). According to Gray, the division received approximately 2,000 returned unsigned mail receipts from the 3,000 asset forfeiture notices that it sent out in 2009 alone. (Id. at 59-60). Gray testified that, during the relevant time period, the division did not first check whether a person to whom notice was being sent was incarcerated. (Id. at 54-55). Gray also testified that, for the same time period, the division generally did not follow up on undelivered returned mail by looking for other addresses. (Id. at 56-57).

Plaintiffs have established that, in 2009 alone, the class could include up to approximately 2,000 individuals. Given that both class definitions cover the years from 2005 to 2009, Plaintiffs have clearly met their burden under Rule 23 to show that joinder is impracticable. See Cohen v. Chilcott, 522 F. Supp. 2d 105, 114 (D.D.C. 2007) ("Courts in this District have generally found that the numerosity requirement is satisfied and that joinder is impracticable where a proposed class has at least forty members."); Pigford v. Glickman, 182 F.R.D. 341, 347 (D.D.C. 1998) ("Mere conjecture, without more, is insufficient to establish numerosity, but plaintiffs do not have to provide an exact number of putative class members in order to satisfy the numerosity requirement.").

    **2. Commonality**

Rule 23(a)(2) requires that there are questions of law or fact common to the class. FED. R. CIV. P. 23(a)(2). "To establish commonality under Rule 23(a)(2), a plaintiff must identify at least one question common to all members of the class." Garcia v. Johanns, 444 F.3d 625, 632 (D.C. Cir. 2006) (citing In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 528 (3d Cir.

---

following up on mailed notices returned undelivered (whether unsigned, unclaimed, or other reason)." (Dkt. No. 18; 4/8/10 Minute Order).

2004)). "Significantly, 'factual variations among the class members will not defeat the commonality requirement, so long as a single aspect or feature of the claim is common to all proposed class members.'" Cohen, 522 F. Supp. 2d at 114 (quoting Bynum v. District of Columbia, 214 F.R.D. 27, 33 (D.D.C. 2003)).

As Plaintiffs have demonstrated through class discovery, their claims raise a number of common issues of fact and law.  Indeed, as discussed in more detail below, those common issues predominate over any individual issues.  All putative plaintiffs are advancing the same legal theory based on the same set of facts and the same course of conduct by the District.  They also claim to have been injured in the same way—by the deprivation of their property without due process.  The questions common to the proposed classes include: 1) whether the District had a custom, practice or policy of failing to check the incarceration status of any individual to whom a notice was being sent; 2) whether the District's practice of failing to send notices to incarcerated persons at their place of incarceration violated plaintiffs' due process rights; 3) whether the District had a custom, practice or policy of failing to conduct any follow up on returned undelivered notices; 4) whether the District's practice of failing to conduct any follow up on undelivered mail receipts violated plaintiffs' due process rights; and 5) whether the District's failure to either return property or begin a forfeiture proceeding violated plaintiffs' rights.  The Court is satisfied that Plaintiffs have met their burden to establish that these common questions of law and fact exist in this case.

   **3. Typicality**

Rule 23(a)(3) requires a finding that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." FED. R. CIV. P. 23(a)(3). "The typicality requirement aims at ensuring that the class representatives have suffered injuries in the same

general fashion as absent class members." Cohen, 522 F. Supp. 2d at 115 (internal citations and quotation marks omitted). A plaintiff's claim is "typical if it arises from the same event or practice or course of conduct that gives rise to a claim of another class member's where his or her claims are based on the same legal theory." Stewart v. Rubin, 948 F. Supp. 1077, 1088 (D.D.C. 1996), aff'd, 124 F.3d 1309 (D.C. Cir. 1997).

There is no genuine dispute regarding the typicality of the claims and defenses of Hardy and Monts vis-à-vis the two proposed classes. Plaintiffs have shown through record evidence that they suffered injuries in the same general fashion as the putative class members—i.e., deprivation of their property without adequate notice. Moreover, Hardy's claims are typical of the "Failed Notice Class,"[2] and Monts is typical of the "Incarcerated Persons Class." Although the District argues in conclusory fashion that the "variety and uniqueness of each purported class member's claims" defeats the typicality requirement, the District offers no specific reasons why any of the absent class member's claims may diverge from those of Hardy or Monts. Accordingly, Plaintiffs have met their burden to establish typicality.

---

[2] The District has repeatedly argued that Hardy's claims are not typical of the proposed class because Hardy supposedly received notice. The District argues that it "has provided proof that when it failed to get a receipt for the registered letter sent to Mr. Hardy it sought further information from the United States Postal Service and was informed that the letter had indeed been delivered." (Dkt. No. 25 at 7-8, n.5). The supposed "proof" on which the District relies, however, fails to establish in any way that Hardy actually received notice.

The notice allegedly sent to Hardy was dated October 25, 2007, and was sent to an address in "Temple Hills, MD 20748-7147." (Dkt. No. 11-1 at 3). The District's "proof" is a print out from the U.S. Postal Service's web site reflecting that a letter with the same tracking number as Hardy's certified letter was delivered on July 28, 2008 in "Washington, D.C. 20020." (Dkt. No. 11-1 at 4). The District has not produced any signed mail receipt for Hardy, and offers no explanation of: 1) why the letter was not delivered until nine months after it was mailed; and 2) why the place of delivery ("Washington, D.C. 20020") is different from the address on the notice ("Temple Hills, MD 20748-7147"). The Court simply cannot credit this supposed "proof," particularly in the face of Hardy's sworn statement that he did not receive any notice from the District of Columbia that it intended to forfeit his money. (Dkt. No. 11-1 at 1-2).

### 4. Adequacy

The final requirement of Rule 23(a) is that the "the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). "Two criteria for determining the adequacy of representation are generally recognized: (1) the named representative must not have antagonistic or conflicting interests with the unnamed members of the class, and (2) the representative must appear able to vigorously prosecute the interests of the class through qualified counsel." Twelve John Does v. District of Columbia, 117 F.3d 571, 575 (D.C. Cir. 1997) (quoting Nat'l Assoc. of Regional Medical Programs, Inc. v. Matthews, 551 F.2d 340, 345 (D.C. Cir. 1976)).

There is no evidence that Plaintiffs' interests are antagonistic or in some way conflict with the interests of the unnamed class members. The Court has closely reviewed the record, and discerns no reason why named Plaintiffs would not fairly and adequately protect the interests of the class. Moreover, the District concedes the adequacy of plaintiffs' counsel to represent the putative class, and this Court has no reason to question that assertion either. (Dkt. No. 37 at 18). Class counsel has vigorously pursued this motion for class certification, addressing and curing the Court's concerns and moving for certification on three different occasions. The Court is satisfied that Plaintiffs and counsel have met the adequacy requirement.

### 5. Ascertainability

Finally, with respect to the "Incarcerated Persons Class," the Court previously expressed some concern that it may not be administratively feasible for a prospective plaintiff to identify himself or herself as a member of the class. Plaintiffs, however, have adequately addressed that concern in their renewed motion. First, Plaintiffs have revised the definition to limit the class to those who were incarcerated at the time the notices were sent, and those who were only

incarcerated by the District. See "Incarcerated Persons Class," ¶ 6 ("At the time of mailing, the person was held by or in the custody of the District of Columbia Department of Corrections."). Second, Plaintiffs have introduced evidence—which the District has not rebutted—reflecting that the date of a person's incarceration with the District is available on current databases. (Dkt. No. 33 at 12-13 and cited exhibits). As Plaintiffs point out, a potential class member will be able to determine, with assistance from counsel and the court, whether he/she falls within the "Incarcerated Persons Class." The District does not contest Plaintiffs' argument that it is possible to determine administratively through the JACCS database whether a person was incarcerated by the District on a particular date. See Affidavit of Deborah Golden at Dkt. No. 33 at Ex. 27. Finally, the District does not contest Plaintiffs' contention that it is administratively feasible to cross reference that information with the signed and unsigned mail receipts that the District retained. (Dkt. No. 33 at 16). As the District conceded at oral argument on this Motion, it is possible to ascertain putative class members for the "Incarcerated Persons Class" by checking the JACCS database in conjunction with the undelivered mail receipts. This is certainly objective data on which counsel can rely in determining the members of the class. The class is, therefore, now clearly defined.

### B. Rule 23(b)(3) factors

In addition to the requirements of subsection (a), the following factors must be met to certify a class under Rule 23(b)(3):[3]

---

[3] In the alternative, Plaintiffs seek to certify the class either as a Rule 23(b)(2) class or as a hybrid 23(b)(2)/(b)(3) class. Because the classes will be certified under Rule 23(b)(3), the Court need not reach this request. In any event, the Court has already held that "[t]here is no reason to consider whether the action would be a hybrid because the only injunctive relief Plaintiffs point to—the "return of money"—is actually part of the claim for money damages." (Dkt. No. 31 at 8). Moreover, it is clear that certification under Rule 23(b)(2) is inappropriate in this case after the Supreme Court's decision in Walmart Stores, Inc. v. Dukes. See 131 S.Ct. 2541, 2557

> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

FED. R. CIV. P. 23(b)(3).

Although there is no bright-line rule providing guidance on how to interpret Rule 23(b)(3), two prominent commentators have both noted that the proper standard is a "pragmatic" one. See 7AA CHARLES ALAN WRIGHT, ARTHUR R. MILLER, MARY KAY KANE & RICHARD L. MARCUS, FEDERAL PRACTICE AND PROCEDURE § 1778 at 121 (3d ed. 2005) ("hereinafter Wright & Miller") ("[T]he proper standard under Rule 23(b)(3) is a pragmatic one, which is in keeping with the basic objectives of the Rule 23(b)(3) class action."); 5 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 23.45 (3d ed. 2007) ("[T]he Rule requires a pragmatic assessment of the entire action and all the issues involved."). Moreover, as the Advisory Committee notes to Rule 23 explain, "[s]ubdivision (b)(3) encompasses those cases in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." FED. R. CIV. P. 23(b)(3), advisory committee's note.

### 1. Predominance

---

(2011) (holding that Rule 23(b)(2) calls for injunction as to all class members or to none of them and "does not authorize class certification when each class member would be entitled to an individualized award of monetary damages."). Plaintiffs make no compelling argument for the Court to revisit its prior decision.

The first requirement is that the questions of law or fact common to class members predominate over any questions affecting only individual members. This requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Amchem Products, Inc. v. Windsor, 521 U.S. 591, 623 (1997). After close examination of the two proposed classes, the Court is satisfied that both classes meet this requirement.

Through class discovery, Plaintiffs have established by a preponderance of the evidence that, at least until approximately October 2009, the District had a custom or practice of: 1) failing to investigate whether the individual to whom an administrative forfeiture notice was being sent was incarcerated at the time the notice was mailed; and 2) failing to perform any follow up on undelivered notices. The District had ample opportunity to engage in class discovery and present evidence of its own to undermine or rebut evidence of this practice. It failed to do so. Indeed, the District does not even meaningfully contest Plaintiffs' argument that this constituted a custom or practice.

The District argues that this Court should not certify the "Failed Notice Class" under Rule 23(b)(3) because individual questions predominate over common questions. The District relies heavily on this Court's February 28, 2012 Memorandum Opinion, in which the Court held that Plaintiffs' previous class definition (which failed to account for the change in the District's policy as of October 2009) was insufficient to meet the Rule 23(b)(3) requirements. The Court previously held that:

> Under Jones v. Flowers, 547 U.S. 220 (2006), upon which Plaintiffs rely, the individual inquiry regarding the reasonableness of the District's efforts to send notice will be fact intensive. See Jones, 547 U.S. at 234 (stating that when notice of tax sale came back came back undelivered, the state should have taken "additional reasonable steps to notify [the appellant], if practicable to do so" and also stating that if there were no "reasonable additional steps the government could have taken upon return of

<mark>
</mark>

> the unclaimed notice letter, it cannot be faulted for doing nothing.") (emphasis added). The Court would, therefore, have to look into the facts of each case to determine whether it was "practicable" for the District to take any additional steps to provide notice to each plaintiff or whether such steps would have been unreasonable or futile.

Dkt. No. 31 at 4-5. As Plaintiffs point out, the new "Failed Notice Class" definition addresses the Court's previous concerns about predominance. By limiting the class definition to those plaintiffs whose claims would arise prior to October 29, 2009, when the District generally neither checked to see if a notice recipient was incarcerated nor took any steps to follow up on undelivered notices, the new definitions "ensure[] (substantial if not complete) uniformity, and little or no individual factual inquiries." (Dkt. No. 33 at 4).

The District's argument—that the Court will be required to make individualized inquiries into each case to determine whether it was "practicable" for the District to take any further steps with respect to any particular returned, undelivered notice—is without merit. The District has presented no evidence that, for any particular notice that was mailed and returned unsigned during the relevant period, the District actually followed up at the time and determined that it was impracticable to send any further notices. Although it is clear under Jones v. Flowers that the government cannot be faulted for doing nothing if there were no "reasonable additional steps the government could have taken," this does not excuse the District from doing nothing at all. See Jones, 547 U.S. 220, 229-30 (2006) (stating that, when notice of tax sale was returned undelivered, "[d]eciding to take no further action is not what someone desirous of actually informing Jones would do . . . .") (internal quotation marks omitted). As the Supreme Court held in Jones, there were "several reasonable steps," including resending the notice via regular mail, that the state could have taken when it learned that its notice went undelivered. See id. at 234-39

("It suffices for present purposes that we are confident that additional reasonable steps were available for Arkansas to employ before taking Jones' property.").

Plaintiffs here have presented testimony from the District's own witness that, prior to October 2009, the District took no steps to follow up on returned undelivered notices of forfeiture. The District has not presented any evidence that, for any particular claimant, it followed up and determined that there were no additional reasonable steps it could have taken. Accordingly, despite ample opportunity to present such evidence, there is no indication that this Court would be required to undergo individualized inquiries. Even assuming the District has evidence that it did follow up on any particular undelivered notice, the District can come forward with that evidence without disrupting the class action. See 7AA Wright & Miller § 1778 (". . . . when one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately . . . .").

Relying on cases distinguishable from this one, the District also argues that certification is inappropriate for the "Failed Notice Class" because of the individualized nature of any damages awards. See Dkt. No. 37 at 18-20. Those cases, however, were instances in which the damages would have required fact-intensive inquiries into each plaintiff's circumstances. See Daskalea v. Washington Humane Society, 275 F.R.D. 346, 379-81 (D.D.C. 2011) (finding that nature of individualized damages inquiry counseled against certification under Rule 23(b)(3) where putative plaintiffs alleged that in several different instances, plaintiffs' pets had been seized, detained and damaged under District law without due process); Jane Does I through III v. District of Columbia, 2006 U.S. Dist. LEXIS 72681, at *9-12 (finding that damages inquiry would require mini-trials where plaintiffs were patients with mental retardation that had been

forced to undergo elective surgeries for which consent was unconstitutionally given on his or her behalf). The District argues that this Court would be required to hold separate "'mini-trials' since damages would depend on the amount of cash each class member had when arrested and the amount forfeited." (Dkt. No. 37 at 19). The District's argument is without merit. As the court recognized in Jane Does I through III, "[i]f the calculation of the damage claims were a mechanical task, the presence of individualized claims would not be a barrier to class certification." Jane Does, 2006 U.S. Dist. LEXIS 72681, at *10. Here, the damages are fixed in that the District's own records (the undelivered notices) reflect the monetary amount that each plaintiff lost. Even assuming interest were to apply to those sums, the calculation of damages claims in this case would clearly be a mechanical task. In sum, having considered the relationship between the common and individual questions for the "Failed Notice Class," the Court is satisfied that the common questions predominate.

Common questions also predominate with respect to the "Incarcerated Persons Class." In Small v. United States, 136 F.3d 1334, 1337 (D.C. Cir. 1998), this Circuit held that where the government knows or can easily ascertain that a person is incarcerated, the government has an "obligation to send adequate notice" of forfeiture to him at the jail or prison. Id. at 1337. Thus, if an individual was incarcerated at the time that the District sent him/her a notice of administrative forfeiture and the District knew or should have known of his/her incarceration, a plaintiff may be able to make out a due process claim against the District.

This Court rejected Plaintiffs' previous class definition because it failed to limit the proposed class to those who were incarcerated at the time that the District sent the notice of administrative forfeiture and also failed to limit the class to those incarcerated by the District of Columbia. The Court denied Plaintiffs' motion to grant class certification because it would be

required to conduct an individual assessment of whether the District knew or should have known that each class member was incarcerated at the time that the District sent a forfeiture notice. Plaintiffs have cured those concerns with their most recent proposed class definition because they have limited the class to those individuals who were "held by" or "in the custody of" the District of Columbia Department of Corrections. Plaintiffs have also presented undisputed evidence that, during the relevant time period, the District was able to access an individual's incarceration status through a database system known as JACCS. (Dkt. No. 33 at Ex. 27). Beyond repeating its previous Memorandum Opinion back to this Court, the District wholly fails to specify with any particularity which individual "fact intensive" inquiries would predominate as to the newly-defined "Incarcerated Persons Class." (Dkt. No. 37 at 11). Nor can this Court discern any. Having considered the relationship between the common and individual questions as to the "Incarcerated Persons Class," this Court is satisfied that the common questions predominate.

### 2. Superiority

In addition to finding predominance, this Court must also consider whether the class action is "superior to other available methods for fairly and efficiently adjudicating the controversy," considering the factors set forth in Rule 23(b)(3)(A)-(D). Having considered and weighed those factors, the Court finds that class action is a superior form of adjudicating this controversy. This is a case with a large number of potential plaintiffs with relatively small individual dollar amounts at stake.[4] A class action would certainly be more desirable than thousands of smaller suits against the District based on essentially the same operative facts and

---

[4] Plaintiffs have submitted samples of undelivered notices during the relevant time period. The amounts seized from the potential claimants ranged from $13 to $215. Moreover, Hardy and Monts allege that the District seized $127.00 and $823.00 from them, respectively.

legal theories. Such actions would require the expenditure of unnecessary litigation costs and duplication of effort.

Moreover, it is unlikely that putative plaintiffs with small claims could or would sue to recover those amounts individually. See Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 809 (1985) ("Class actions also may permit the plaintiffs to pool claims which would be uneconomical to litigate individually . . . this lawsuit involves claims averaging about $100 per plaintiff; most of the plaintiffs would have no realistic day in court if a class action were not available."). As one prominent treatise has noted, "[w]hen the claims of class members are small, denial of a class action would effectively exclude them from judicial redress. . . .[t]he need to provide a forum for small claimants has, therefore, assumed an important role in resolving the superiority issue." 2 NEWBERG ON CLASS ACTIONS § 4:27 (4th ed.); see also Amchem, 521 U.S. at 616-17 (noting that Advisory Committee "had dominantly in mind vindication of the rights of groups of people who individually would be without effective strength to bring their opponents into court at all.") (internal quotation marks and citation omitted).

The District fails to make any meaningful argument why class action would not be a superior method of adjudicating this case. The District only argues in a conclusory manner that "the number of individual issues here appears to have risen to be coextensive with the number of members of the putative classes." (Dkt. No. 37 at 20).

Given the high number of claims, the relatively small amounts of damages per plaintiff, and the predominant common issues of law and fact, this Court finds that class action with respect to the two classes would be a superior method of adjudicating this controversy. A class action would, in short, achieve "economies of time, effort, and expense, and promote uniformity

of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." FED. R. CIV. P. 23(b)(3), advisory committee's note.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs' Motion to Certify Class is granted. An Order accompanies this Memorandum Opinion.

SO ORDERED.

Date:  August 22, 2012

                                                               Robert L. Wilkins
                                                              United States District Judge